## STATE OF CONNECTICUT v. HECTOR REVELO
### (SC 16226)

McDonald, C. J., and Norcott, Palmer, Sullivan and Vertefeuille, Js.*

* The listing of justices reflects their seniority status on this court as of the date of argument.

Although Chief Justice McDonald reached the mandatory age of retirement before the date that this opinion officially was released, his continued participation on this panel is authorized by General Statutes § 51-198 (c).

Argued October 26, 2000—officially released June 26, 2001

*Alix C. Walmsley*, assistant public defender, with whom, on the brief, was *Pamela Nagy*, assistant public defender, for the appellant (defendant).

*Leon F. Dalbec, Jr.*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Cynthia Serafini*, assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. This appeal raises a question of first impression regarding the constitutional limits on judicial involvement in plea bargaining. The principal issue that we must decide is whether the due process rights of the defendant, Hector Revelo, were violated when the trial court: (1) offered to sentence the defendant to eight years imprisonment for the defendant's plea of guilty of General Statutes § 21a-278[1] in connection with the defendant's sale of narcotics; (2) withdrew that offer upon learning that the defendant wished to exercise his right to a judicial determination of his then pending motion to suppress; (3) informed the defendant that he would receive a sentence of nine years imprisonment if he decided to plead guilty in the event that his motion to suppress was denied; and (4) imposed the nine year sentence following the defendant's conditional plea of nolo contendere, which the defendant had entered as a result of the denial of his motion to suppress. We

---

[1] The sale of narcotics is prohibited under General Statutes § 21a-278 (a), which provides in relevant part: "Any person who manufactures, distributes, sells, prescribes, dispenses, compounds, transports with the intent to sell or dispense, possesses with the intent to sell or dispense, offers, gives or administers to another person one or more preparations, compounds, mixtures or substances containing an aggregate weight of one ounce or more of heroin, methadone or cocaine or an aggregate weight of one-half gram or more of cocaine in a free-base form or a substance containing five milligrams or more of lysergic acid diethylamide, except as authorized in this chapter, and who is not, at the time of such action, a drug-dependent person, shall be imprisoned for a minimum term of not less than five years nor more than twenty years; and, a maximum term of life imprisonment. . . ."

conclude that the additional year of confinement that the trial court imposed on the defendant for exercising his right to a judicial determination of his motion to suppress violates the due process clause of the fourteenth amendment to the United States constitution.[2]

The following undisputed facts and procedural history are set forth in the opinion of the Appellate Court. "The defendant was charged in a four count information with two counts of selling illegal drugs in violation of § 21a-278 (a), one count of operating a drug factory in violation of General Statutes § 21a-277 (c)[3] and one count of risk of injury to a child in violation of General Statutes [Rev. to 1997] § 53-21.[4] [These charges stemmed from the execution of a search warrant at the defendant's home that resulted in the seizure of a substantial quantity of cocaine.] On June 17, 1997, the trial court announced that a plea offer of 'eight years to serve in jail' had been made to the defendant, but that the defendant wanted a hearing on his motion to suppress [in which he alleged that the facts set forth in the warrant did not support a finding of probable cause]. The court stated further that if the defendant wanted to plead guilty after losing that motion, the

[2] The due process clause of the fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty or property, without due process of law . . . ."

[3] General Statutes § 21a-277 (c) provides in relevant part: "No person shall knowingly possess drug paraphernalia in a drug factory situation as defined by subdivision (20) of section 21a-240 for the unlawful mixing, compounding or otherwise preparing any controlled substance for purposes of violation of . . . chapter [420b of the General Statutes]."

[4] General Statutes (Rev. to 1997) § 53-21 provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony."

sentence would be nine years instead of eight years.[5] The defendant responded that he understood.

"Two weeks after the denial of his motion to suppress,[6] the defendant accepted an offer of a plea bargain for a definite sentence of nine years imprisonment on the charge of sale of illegal drugs, reserving the right to appeal the denial of his motion to suppress pursuant to [General Statutes] § 54-94a.[7] The state agreed to nolle the three remaining charges. After canvassing the defendant about his understanding of the consequences of a nolo contendere plea [including his right to seek appellate review of the denial of his motion to suppress] and informing him that a sentence of nine years imprisonment would be imposed under the plea agreement, the trial court accepted the plea on the charge of selling

---

[5] The following is the relevant portion of the colloquy between the trial court and the defendant:

"The Court: . . . Now, in this matter . . . I offered you eight years to serve in jail. You understand that? . . . And you want to have a hearing on a motion to suppress, right?

"The Defendant: Yes.

"The Court: And if you lose that motion and you want to plead, it's nine years, not eight years. You understand that?

"The Defendant: Yes."

[6] "The motion to suppress the evidence obtained from the search of the defendant's apartment was heard and decided by a judge different from the one who imposed the sentence." *State* v. *Revelo*, 55 Conn. App. 217, 223 n.4, 740 A.2d 390 (1999).

[7] General Statutes § 54-94a provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress evidence based on an unreasonable search or seizure, motion to suppress statements and evidence based on the involuntariness of a statement or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

illegal drugs.[8] At the conclusion of the proceeding, the court imposed a sentence of nine years [imprisonment]."[9] *State* v. *Revelo*, 55 Conn. App. 217, 222–23, 740 A.2d 390 (1999).

On appeal to the Appellate Court, the defendant claimed that the affidavit in support of the search warrant for his apartment did not contain facts sufficient to permit a finding of probable cause to justify the search. Id., 219. The defendant also claimed that the trial court's imposition of the nine year sentence violated his right to due process because the court imposed that sentence, instead of the eight year sentence that he originally had been offered, solely because he had chosen to exercise his constitutional and statutory rights to a judicial determination of his motion to suppress. Id., 223.

---

[8] The following colloquy occurred between the trial court and the defendant during the plea canvass:

"The Court: Now, the agreement is nine years. Do you understand that?

"The [Defendant]: Yes.

* * *

"The Court: You filed a written plea of nolo contendere. It's a conditional plea of nolo contendere in that you want the right to take an appeal from [the] denial of your motion to suppress . . . . Do you understand that?

"The [Defendant]: Yes.

"The Court: And the issue to be considered in such an appeal is solely, and limited to, whether it was proper for the court to have denied the motion to suppress. Do you understand that?

"The [Defendant]: Yes.

* * *

"The Court: Okay. You [pleaded] no contest. You're not admitting that the drugs were yours. You've entered your plea to accept the sentence of nine years rather than go to trial where you acknowledge the state would have had substantial evidence to convict you and, if convicted, you could have received a more severe penalty. Do you understand that?

"The [Defendant]: Yes."

[9] We note that the same judge who had informed the defendant of his sentencing options; see footnote 5 of this opinion; also accepted the defendant's plea and imposed the nine year sentence. That judge was the presiding judge of the criminal division of the judicial district of Waterbury at the time of the defendant's plea and sentencing.

The Appellate Court rejected the defendant's contention regarding the affidavit in support of the search warrant.[10] Id., 222. The Appellate Court also concluded that the defendant was not entitled to review of his due process claim because § 54-94a expressly provides that the issue to be considered in an appeal brought under that section shall be limited to the propriety of the court's denial of the defendant's motion to suppress or motion to dismiss.[11] Id., 224–25, 226; see General Statutes § 54-94a. In declining to review the defendant's due process claim, the Appellate Court reasoned that because the defendant had accepted the terms of the court's plea offer "knowingly and freely"; State v. Revelo, supra, 55 Conn. App. 225; that offer contained "no element of punishment or retaliation." Id.

Judge Shea dissented from the majority opinion of the Appellate Court panel with respect to the disposition of the defendant's due process claim.[12] Id., 226 (Shea, J., dissenting). Judge Shea concluded that the Appellate Court had jurisdiction to review the defendant's due process claim and that appellate review of that claim was warranted.[13] See id., 229, 232 (Shea, J., dissenting).

[10] Specifically, the Appellate Court concluded that the facts set forth in the affidavit in support of the search warrant were sufficient to establish probable cause to search the defendant's apartment. State v. Revelo, supra, 55 Conn. App. 222.

[11] The defendant sought the Appellate Court's review of this claim under State v. Golding, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); see State v. Revelo, supra, 55 Conn. App. 224; which governs appellate review of unpreserved constitutional claims.

[12] Judge Shea agreed with that portion of the majority opinion upholding the denial of the defendant's motion to suppress. State v. Revelo, supra, 55 Conn. App. 226 (Shea, J., dissenting).

[13] Judge Shea explained that both the Appellate Court, in State v. Piorkowski, 37 Conn. App. 252, 258, 656 A.2d 1046 (1995), rev'd on other grounds, 236 Conn. 388, 672 A.2d 921 (1996), and this court, also in State v. Piorkowski, 236 Conn. 388, 400, 672 A.2d 921 (1996), have "explicitly rejected the view . . . that § 54-94a restricts the subject matter jurisdiction of an appellate court to consider issues involved in an appeal beyond those specified in the statute." State v. Revelo, supra, 55 Conn. App. 229 (Shea, J., dissenting). In Judge Shea's view, consideration of the defendant's due process claim

Judge Shea also concluded "that the additional year of confinement imposed on the defendant as a penalty for exercising his lawful right to pursue his motion to suppress is contrary to due process of law and, therefore, invalid." Id., 226 (*Shea, J.*, dissenting).

We granted the defendant's petition for certification to appeal limited to the issue of whether the Appellate Court improperly declined to review the defendant's due process challenge to the trial court's imposition of the nine year sentence and, if so, whether, in the particular circumstances of this case, that sentence constituted an impermissible penalty on the defendant's exercise of his right to a judicial determination of his motion to suppress.[14] See *State* v. *Revelo*, 252 Conn.

was warranted under the criteria established by this court for appellate review of unpreserved constitutional claims; see *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); and under the supervisory authority that our appellate courts possess over proceedings on appeal to facilitate business and advance justice. *State* v. *Revelo*, supra, 229, 232 (*Shea, J.*, dissenting).

[14] We granted certification limited to the following issue: "Did the Appellate Court properly conclude that it lacked subject matter jurisdiction over the defendant's claim of judicial vindictiveness subsequent to his plea of nolo contendere, and, if not, were the defendant's due process rights violated when the trial court sentenced him to a greater period of incarceration after the denial of his suppression motion than it would have if he had waived his right to a determination of his suppression claim and entered his nolo plea prior to a determination of that claim?" *State* v. *Revelo*, 252 Conn. 903, 903–904, 743 A.2d 617 (1999).

We note that, with respect to the first part of the certified question, both the state and the defendant agree that § 54-94a does not limit an appellate court's subject matter jurisdiction to the issues identified in that provision, namely, challenges to a trial court's ruling on a motion to suppress or a motion to dismiss. See *State* v. *Piorkowski*, 236 Conn. 388, 400, 672 A.2d 921 (1996) ("§ 54-94a is not a subject matter jurisdictional statute"). The parties disagree, however, regarding the accuracy of this court's statement, contained in the certified question, that the Appellate Court "conclude[d] that it lacked subject matter jurisdiction over the defendant's [constitutional] claim . . . ." *State* v. *Revelo*, supra, 252 Conn. 903. The state contends that the Appellate Court declined to review the defendant's due process challenge to his nine year sentence on discretionary grounds, while the defendant construes the opinion of the Appellate Court as concluding that that court lacked subject matter jurisdiction over the defendant's due process claim.

903, 903–904, 743 A.2d 617 (1999). We are persuaded that the defendant's due process claim merits appellate review and, furthermore, that the plea agreement and resulting imposition of the nine year sentence in this case does not satisfy the requirements of due process.[15]

I

The defendant first contends that appellate review of his due process claim is warranted even though that claim gives rise to an issue that does not fall within the ambit of § 54-94a. We agree.

The state concedes that this court has subject matter jurisdiction to entertain the defendant's due process claim even though that claim falls outside the purview of § 54-94a. See footnote 14 of this opinion. In light of that concession, the state also acknowledges that we have discretion to consider the defendant's due process claim under our inherent supervisory authority over the administration of justice.[16] The state contends, how-

Upon further consideration, we are persuaded, contrary to the statement contained in the certified question, that the Appellate Court's refusal to consider the defendant's due process claim was based on its determination that the claim did not *merit* review and not that the court lacked subject matter jurisdiction over the claim.

[15] The defendant also invokes his due process rights under article first, § 8, of the Connecticut constitution. "The defendant does not claim, however, that he is entitled to any greater protection under the due process clause of the state constitution than he is under the analogous provision of the federal constitution. For purposes of this appeal, therefore, we treat the state and federal due process clauses as embodying the same level of protection." *State* v. *Austin*, 244 Conn. 226, 237 n.11, 710 A.2d 732 (1998).

[16] "As an appellate court, we possess an inherent supervisory authority over the administration of justice. . . . The standards that we set under this supervisory authority are not satisfied by observance of those minimal historic safeguards for securing trial by reason which are summarized as due process of law. . . . Rather, the standards are flexible and are to be determined in the interests of justice. . . . We previously have exercised our supervisory powers to direct trial courts to adopt judicial procedures that will address matters that are of utmost seriousness, not only for the integrity of a particular trial but also for the perceived fairness of the judicial system as a whole." (Citations omitted; internal quotation marks omitted.) *State* v. *Coleman*, 242 Conn. 523, 539–40, 700 A.2d 14 (1997). However,

ever, that we should decline to exercise discretionary review of the defendant's due process claim because the defendant effectively had waived that claim when he acknowledged, at his plea canvass, that the sole issue he could raise on appeal was the propriety of the denial of his motion to suppress.[17] In further support of its claim, the state emphasizes that this court has been reluctant to invoke its authority to review an issue raised in connection with a conditional plea of nolo contendere when, as in this case, that issue does not fall within the narrow scope of § 54-94a.[18]

We agree with the thrust of the state's argument that, in the absence of a showing of good cause, an appellate court should decline to review an issue that has not been raised in accordance with the provisions of § 54-94a. We also recognize that such good cause is likely to be established only infrequently. For several reasons, however, we are persuaded that this case presents one of the rare exceptions to the general rule of unreviewability. First, the defendant's due process claim gives rise to an important issue, namely, the proper role of our trial judges in the plea bargaining process, the significance of which transcends this particular case.[19] Sec-

"[o]ur supervisory authority is not a form of free-floating justice, untethered to legal principle. . . . Rather, the integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of our supervisory powers." (Internal quotation marks omitted.) *State* v. *Delvalle*, 250 Conn. 466, 476 n.13, 736 A.2d 125 (1999); see also Practice Book § 60-2 ("[t]he supervision and control of the proceedings on appeal shall be in the court having appellate jurisdiction from the time the appeal is filed, or earlier, if appropriate").

[17] See footnote 8 of this opinion.

[18] See, e.g., *State* v. *Kelley*, 206 Conn. 323, 335–36, 537 A.2d 483 (1988) (refusing to invoke supervisory authority over claim not within purview of § 54-94a); *State* v. *Madera*, 198 Conn. 92, 99–102, 503 A.2d 136 (1985) (same). Contra *State* v. *Chung*, 202 Conn. 39, 44–45, 519 A.2d 1175 (1987) (agreeing to invoke supervisory authority to review claim not within purview of § 54-94a).

[19] We note that we previously have exercised our supervisory authority in regard to the sentencing function of the trial court. See *State* v. *Coleman*, 242 Conn. 523, 534, 700 A.2d 14 (1997).

ond, the undisputed facts of this case bear out the defendant's claim of a constitutional violation. Finally, in explaining its decision not to review the issue, the Appellate Court indicated in dictum that the practice challenged by the defendant is permissible.[20] *State* v. *Revelo*, supra, 55 Conn. App. 225–26. In light of our contrary determination, we are unwilling to allow that dictum to stand lest it be construed by our trial judges as approval of a practice that violates principles of due process. Thus, although the defendant's constitutional claim falls outside the scope of § 54-94a, the defendant has met his heavy burden of establishing that appellate review of his claim nevertheless is warranted.[21]

---

[20] The Appellate Court stated: "Under the particular circumstances of this case, the defendant knew exactly what was being offered after his motion to suppress was denied, i.e., a sentence of nine years on one count of a four count information, reserving the right to appeal pursuant to § 54-94a. He was free to refuse the offer and to exercise his constitutional right to a trial. Instead, he chose to accept it, knowingly and freely, with the advice and assistance of an attorney, and with a full understanding of the consequences of entering such a plea, as explained to him by the trial court.

"As long as the defendant is free to accept or reject the offer, there is no element of punishment or retaliation. *Bordenkircher* v. *Hayes*, 434 U.S. 357, 363, 98 S. Ct. 663, 54 L. Ed. 2d 604 (1978). By entering his plea of nolo contendere pursuant to § 54-94a, he accepted the condition of the statute that '[t]he issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress . . . .' A review of the plea canvass reveals that the defendant expressly stated that he understood that the only issue he could raise on appeal was whether the trial court improperly denied his motion to suppress.

"Further, the defendant's written and signed plea of nolo contendere offered pursuant to § 54-94a specifically stated that the plea was being entered on the condition that he had the right to take an appeal, with the following motion reserved for review: 'Denial of motion to suppress by Judge Gill.' We conclude, therefore, that the defendant does not have the right to raise on appeal the issue he asks us to review. Accordingly, we will not review his claim." *State* v. *Revelo*, supra, 55 Conn. App. 225–26.

[21] Although it generally is true that a guilty or nolo contendere plea constitutes a waiver of claims that an accused might have raised if he had proceeded to trial, the defendant's due process claim challenges the validity of the process by which the plea agreement was reached. Moreover, although the defendant agreed that the issue on appeal would be limited to that concerning the denial of his motion to suppress, he never expressly waived

## II

We next address the defendant's contention that, in the particular circumstances of this case, the trial court's role in the plea bargaining process violated his constitutional right to due process. We agree with the defendant's claim.

We begin our analysis of the defendant's claim by reaffirming our recognition of the critical role that pretrial negotiations play in the criminal justice system. See, e.g., *Statewide Grievance Committee* v. *Whitney*, 227 Conn. 829, 842, 633 A.2d 296 (1993). "Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of [the] criminal justice system." *Blackledge* v. *Allison*, 431 U.S. 63, 71, 97 S. Ct. 1621, 52 L. Ed. 2d 136 (1977). Indeed, the United States Supreme Court has stated that "[t]he disposition of criminal charges by agreement between the prosecutor and the accused . . . is an essential component of the administration of justice. Properly administered, it is to be encouraged. If every criminal charge were subjected to a full-scale trial, the States and the Federal Government would need to multiply by many times the number of judges and court facilities.

"Disposition of charges after plea discussions is not only an essential part of the process but a highly desirable part for many reasons. It leads to prompt and largely final disposition of most criminal cases; it avoids much of the corrosive impact of enforced idleness during pretrial confinement for those who are denied release pending trial; it protects the public from those accused persons who are prone to continue criminal conduct even while on pretrial release; and, by shorten-

his right to challenge the constitutionality of the plea agreement itself. In the particular circumstances presented, we do not believe that the defendant should be foreclosed from appellate review of his constitutional claim.

ing the time between charge and disposition, it enhances whatever may be the rehabilitative prospects of the guilty when they are ultimately imprisoned." *Santobello* v. *New York*, 404 U.S. 257, 260–61, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971). As the United States Supreme Court also has stated, however, the benefits of plea bargaining "presuppose fairness in securing agreement between an accused and a prosecutor." Id., 261.

Although plea bargaining between the state and the accused is a universally accepted practice, many jurisdictions bar judges from active participation in plea negotiations.[22] Indeed, on those occasions when this court has addressed claims regarding the active participation in plea bargaining by the judge responsible for trying the case and for sentencing the defendant in the event of a conviction, we have underscored the inappropriateness of such conduct due to its inherent dangers.[23] E.g., *Safford* v. *Warden*, 223 Conn. 180, 194 n.16, 612 A.2d 1161 (1992); *State* v. *Gradzik*, 193 Conn. 35, 47, 475 A.2d 269 (1984); cf. *State* v. *Fullwood*, 194 Conn. 573, 580–81, 484 A.2d 435 (1984).

By contrast, this court expressly has approved judicial involvement in plea discussions when it is clear to all concerned parties that, in the event a plea agreement is not reached, the judge involved in the plea negotia-

---

[22] For example, federal district court judges are prohibited from active participation in plea discussions. Fed. R. Crim. P. 11 (e) (1). Some states also prohibit judicial involvement in plea discussions between the state and the accused. E.g., Colo. Rev. Stat. § 16-7-302 (1) (2000) ("[t]he trial judge shall not participate in plea discussions"); Wash. Rev. Code Ann. § 9.94A.080 (West 1998) ("[t]he court shall not participate in any [plea] discussions").

[23] "Those dangers are that (1) the trial judge's impartiality may truly be compromised by his [or her] own perception of a personal stake in the agreement, resulting in resentment of the defendant who rejects [the judge's] suggested disposition, (2) the defendant may make incriminating concessions during the course of plea negotiations, and (3) the trial judge may become or appear to become an advocate for his [or her] suggested resolution." (Internal quotation marks omitted.) *Safford* v. *Warden*, 223 Conn. 180, 194 n.16, 612 A.2d 1161 (1992).

tions will play no role in the ensuing trial, including the imposition of sentence upon conviction. We first voiced our approval of this procedure in *State* v. *Niblack*, 220 Conn. 270, 596 A.2d 407 (1991), in which we stated: "The plea negotiations involved an assistant state's attorney, defense counsel and eventually a judge who assisted the adversaries in reaching an agreement, which resulted in the court's recommendation of an aggregate sentence of fifty years on all charges. The judge was responsible for conducting plea negotiations and, if an agreement was reached, for holding a plea and sentencing hearing. If negotiations were not successful, however, a judge who was not involved in the plea negotiations would have presided at trial and pronounced sentence if the defendant were found guilty. We approve of the procedure followed in reaching the plea agreement."[24] Id., 280. This court subsequently has reaffirmed the propriety of this procedure, noting that "[a]s long as the defendant is free to reject the plea offer [made after negotiations conducted by one judge] and go to trial before a [second] judge who was not involved in or aware of those negotiations, [the defendant] is not subject to any undue

---

[24] In *State* v. *Niblack*, supra, 220 Conn. 270, the defendant claimed that his guilty plea was involuntary because, inter alia, the trial court actively participated in the plea bargaining process. In support of his claim, the defendant pointed to the following colloquy between the court and the assistant state's attorney that occurred after the plea canvass:

The Court: "Is your recommendation fifty years or is my sentence I indicated fifty years?" (Internal quotation marks omitted.) Id., 279.

Assistant state's attorney: "That's yours." (Internal quotation marks omitted.) Id.

The Court: "I've indicated to both the state and to your lawyer that I would impose a sentence of fifty years." (Internal quotation marks omitted.) Id.

As further evidence of the court's active involvement in the plea bargaining process, the defendant in *Niblack* also noted that the court, in denying the defendant's request for a continuance so that he could think further about the court's offer, stated: "We've discussed it at great length at pretrial and I'm not going to hold it open . . . . If he doesn't want the offer, I don't want him to feel he's being pressured. He can have his trial and if he's acquitted I wish him a lot of luck, but I'm not going to have any games played with me." (Internal quotation marks omitted.) Id.

pressure to agree to the plea agreement, and the impartiality of the judge who will sentence him in the event of conviction after trial is not compromised."[25] *Safford v. Warden,* supra, 223 Conn. 194 n.16.

The defendant does not challenge our statements in *Niblack* and *Safford* regarding the propriety of a trial court's participation in the plea bargaining process, subject, of course, to the limitations that we have placed on such involvement to ensure fairness in that process. Rather, the defendant contends that the trial court improperly penalized him for exercising his right to a judicial determination of his motion to suppress by increasing the terms of the plea bargain from eight to nine years solely because of his decision to exercise that right. Our resolution of this claim requires, first, a review of the seminal United States Supreme Court cases regarding the propriety of burdening a defendant's exercise of a statutory or constitutional right.

"To punish a person because he has done what the law plainly allows him to do is a due process violation 'of the most basic sort.' *Bordenkircher* v. *Hayes,* 434 U.S. 357, 363 [98 S. Ct. 663, 54 L. Ed. 2d 604 (1978)]. In a series of cases beginning with *North Carolina* v. *Pearce,* [395 U.S. 711, 89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969)] and culminating in *Bordenkircher* . . . the [United States Supreme] Court has recognized this basic—and itself uncontroversial—principle. For while an individual certainly may be penalized for violating the law, he [or

---

[25] It is a common practice in this state for the presiding criminal judge to conduct plea negotiations with the parties. If plea discussions ultimately do not result in a plea agreement, the trial of the case is assigned to a second judge who was not involved in the plea discussions and who is unaware of the terms of any plea bargain offered to the defendant. The judge responsible for trying the case also is responsible for sentencing the defendant in the event the defendant is convicted after trial. As we have indicated; see footnote 9 of this opinion; the judge who conducted the plea negotiations in this case, and who thereafter sentenced the defendant, was the presiding judge.

she] just as certainly may not be punished for exercising a protected statutory or constitutional right. . . .

"In *North Carolina* v. *Pearce*, [supra, 395 U.S. 711], the Court held that neither the Double Jeopardy Clause nor the Equal Protection Clause prohibits a trial judge from imposing a harsher sentence on retrial after a criminal defendant successfully attacks an initial conviction on appeal. The Court stated, however, that '[i]t can hardly be doubted that it would be a flagrant violation [of the due process clause] of the Fourteenth Amendment for a state trial court to follow an announced practice of imposing a heavier sentence upon every reconvicted defendant for the explicit purpose of punishing the defendant for his having succeeded in getting his original conviction set aside.' [Id., 723–24]. The Court continued: 'Due process of law, then, requires that vindictiveness against a defendant for having successfully attacked his [or her] first conviction must play no part in the sentence he [or she] receives after a new trial. And since the fear of such vindictiveness may unconstitutionally deter a defendant's exercise of the right to appeal or collaterally attack his first conviction, due process also requires that a defendant be freed of apprehension of such a retaliatory motivation on the part of the sentencing judge.' [Id., 725]. In order to assure the absence of such a motivation, the Court concluded: '[W]henever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his [or her] doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.' [Id., 726]. In sum, the Court applied a pre-

sumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence.

"In *Blackledge* v. *Perry*, 417 U.S. 21 [94 S. Ct. 2098, 40 L. Ed. 2d 628 (1974)], the [United States Supreme] Court confronted the problem of increased punishment upon retrial after appeal in a setting different from that considered in *Pearce*. Perry was convicted of assault in an inferior court having exclusive jurisdiction for the trial of misdemeanors. The court imposed a [six] month sentence. Under North Carolina law, Perry had an absolute right to a trial de novo in the [North Carolina] Superior Court, which possessed felony jurisdiction. After Perry filed his notice of appeal, the prosecutor obtained a felony indictment charging him with assault with a deadly weapon. Perry pleaded guilty to the felony and was sentenced to a term of five to seven years in prison.

"In reviewing Perry's felony conviction and increased sentence, [the] Court first stated the essence of the holdings in *Pearce* and the cases that had followed it: 'The lesson that emerges from *Pearce, Colten* [v. *Kentucky*, 407 U.S. 104, 92 S. Ct. 1953, 32 L. Ed. 2d 584 (1972)],[26] and *Chaffin* [v. *Stynchcombe*, 412 U.S. 17, 93 S. Ct. 1977, 36 L. Ed. 2d 714 (1973)][27] is that the Due Process Clause is not offended by all possibilities of increased punishment upon retrial after appeal, but only by those that pose a realistic likelihood of "vindictiveness." ' [*Blackledge* v. *Perry*, supra, 417 U.S. 27].

---

[26] In *Colten* v. *Kentucky*, supra, 407 U.S. 116, the court held that the prophylactic rule announced in *Pearce* does not apply in the context of a two-tier system allowing for a trial de novo in a court of general criminal jurisdiction following a trial or guilty plea in an inferior court because the likelihood of vindictiveness is not present in such circumstances.

[27] In *Chaffin* v. *Stynchcombe*, supra, 412 U.S. 28, the court concluded that the *Pearce* presumption of vindictiveness does not apply to cases in which a defendant, after successfully challenging his or her conviction on appeal, subsequently is convicted and resentenced by a jury.

The Court held that the opportunities for vindictiveness in the situation before it were such 'as to impel the conclusion that due process of law requires a rule analogous to that of the *Pearce* case.' [Id.] . . .

\* \* \*

"In *Bordenkircher* v. *Hayes*, [supra] 434 U.S. 357, the [United States Supreme] Court for the first time considered an allegation of vindictiveness that arose in a pretrial setting. In that case the Court held that the Due Process Clause of the Fourteenth Amendment did not prohibit a prosecutor from carrying out a threat, made during plea negotiations, to bring additional charges against an accused who refused to plead guilty to the offense with which he was originally charged. The prosecutor in that case had explicitly told the defendant that if he did not plead guilty and 'save the court the inconvenience and necessity of a trial' he would return to the grand jury to obtain an additional charge that would significantly increase the defendant's potential punishment. The defendant refused to plead guilty and the prosecutor obtained the indictment. It was not disputed that the additional charge was justified by the evidence, that the prosecutor was in possession of this evidence at the time the original indictment was obtained, and that the prosecutor sought the additional charge because of the accused's refusal to plead guilty to the original charge.

"In finding no due process violation, the Court in *Bordenkircher* considered the decisions in *Pearce* and *Blackledge*, and stated: 'In those cases the Court was dealing with the State's unilateral imposition of a penalty upon a defendant who had chosen to exercise a legal right to attack his original conviction—a situation "very different from the give-and-take negotiation common in plea bargaining between the prosecution and defense, which arguably possess relatively equal bar-

gaining power." . . .' The Court stated that the due process violation in *Pearce* and *Blackledge* 'lay not in the possibility that a defendant might be deterred from the exercise of a legal right . . . but rather in the danger that the State might be retaliating against the accused for lawfully attacking his conviction.' [Id., 363].

"The Court held, however, that there was no such element of punishment in the 'give-and-take' of plea negotiation, so long as the accused 'is free to accept or reject the prosecution's offer.' [Id.] The Court noted that, by tolerating and encouraging the negotiation of pleas, [the] Court had accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his constitutional right to stand trial. The Court concluded: 'We hold only that the course of conduct engaged in by the prosecutor in this case, which no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution, did not violate the Due Process Clause of the Fourteenth Amendment.' [Id., 365].

"The outcome in *Bordenkircher* was mandated by [the] Court's acceptance of plea negotiation as a legitimate process. In declining to apply a presumption of vindictiveness, the Court recognized that 'additional' charges obtained by a prosecutor could not necessarily be characterized as an impermissible 'penalty.' Since charges brought in an original indictment may be abandoned by the prosecutor in the course of plea negotiation—in often what is clearly a 'benefit' to the defendant—changes in the charging decision that occur in the context of plea negotiation are an inaccurate measure of improper prosecutorial 'vindictiveness.' An initial indictment—from which the prosecutor embarks on a course of plea negotiation—does not necessarily define the extent of the legitimate interest in prosecu-

tion. For just as a prosecutor may forgo legitimate charges already brought in an effort to save the time and expense of trial, a prosecutor may file additional charges if an initial expectation that a defendant would plead guilty to lesser charges proves unfounded." (Citation omitted.) *United States* v. *Goodwin*, 457 U.S. 368, 372–80, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982).

As the foregoing cases indicate, principles of due process prohibit a court from retaliating against a defendant merely for exercising a statutory or constitutional right. In this case, the trial court told the defendant that he would be required to serve one extra year in prison if he agreed to plead guilty only after exercising his right to a judicial determination of his motion to suppress. By requiring that additional period of incarceration for no reason other than the defendant's decision to pursue his motion to suppress, the trial court punished the defendant for doing "what the law plainly allow[ed] him to do . . . ." *Bordenkircher* v. *Hayes*, supra, 434 U.S. 363. Although a court may deny leniency to an accused who, like the defendant, elects to exercise a statutory or constitutional right, a court may not penalize an accused for exercising such a right by increasing his or her sentence solely because of that election.

It has been noted that, in certain circumstances, it may be difficult to draw a meaningful distinction between "enhancing" the punishment imposed on an accused who exercises a constitutional right and denying him the "leniency" that he claims he would deserve if he waived that right. See, e.g., *Roberts* v. *United States*, 445 U.S. 552, 557 n.4, 100 S. Ct. 1358, 63 L. Ed. 2d 622 (1980) ("[w]e doubt that a principled distinction may be drawn between 'enhancing' the punishment imposed upon the petitioner [for not cooperating with the government] and denying him the 'leniency' he claims would be appropriate if he had [waived his right to remain silent and] cooperated"). Although the dis-

tinction between refusing to show leniency to an accused who insists on asserting a constitutional right and punishing an accused for asserting that right may, at times, be a fine one, there is no difficulty in discerning what occurred in this case: the trial court imposed a more severe sentence on the defendant solely because he asserted his right to a judicial ruling on his motion to suppress. In doing so, the trial court unfairly punished the defendant for exercising that right in violation of the federal due process clause. See, e.g., *United States* v. *Rivera*, 201 F.3d 99, 102 (2d Cir. 1999) (trial court may not impose additional sentence on defendant for exercising fifth amendment right to remain silent after conviction); *United States* v. *Moskovits*, 86 F.3d 1303, 1310–11 (3d Cir. 1996) (trial court may not consider as sentencing factor defendant's decision to exercise constitutional right to trial by jury rather than accept government's plea offer); *United States* v. *Stratton*, 820 F.2d 562, 564 (2d Cir. 1987) (impermissible for trial court to impose enhanced sentence for defendant's refusal to cooperate with investigators by remaining silent).

Relying on the fact that the defendant entered his plea of nolo contendere and was sentenced to nine years in prison as a direct result of plea discussions conducted by the trial court, the state maintains that our analysis of the defendant's due process claim is governed by *Bordenkircher* v. *Hayes*, supra, 434 U.S. 357, which sanctions the government's practice of threatening increased charges during the course of plea negotiations and making good on the threat if the defendant refuses to enter a plea. It is true, of course, that, under *Bordenkircher*, a *prosecutor* engaged in plea negotiations with the defendant lawfully may file additional charges and seek a greater sentence if the defendant does not accept the state's offer. For good reason, however, neither *Bordenkircher* nor any other case that

has been brought to our attention authorizes such conduct by the *court.* As the United States Supreme Court explained in *Bordenkircher,* plea bargaining flows from " 'the mutuality of advantage' "; id., 363; to prosecution and defense, whose " 'relatively equal bargaining power' "; id., 362; is reflected in the " 'give-and-take negotiation' "; id.; that is common in plea negotiations. Such is not the case when, as in this case, the court, itself, dictates the terms of a plea agreement that exacts a penalty on the defendant solely for asserting his right to challenge the constitutionality of the search and seizure that resulted in his arrest and prosecution. In such circumstances, "[t]he unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness." (Internal quotation marks omitted.) *United States* v. *Werker,* 535 F.2d 198, 202 (2d Cir. 1976).[28] The court, in wielding its power as it did in this case, discharged its sentencing function in a manner that is legally indistinguishable from the kind of "unilateral imposition of a penalty upon a defendant who ha[s] chosen to exercise a legal right" that has been held unconstitutional. *Bordenkircher* v. *Hayes,* supra, 362.

As we previously have discussed, this court, in *Safford* v. *Warden,* supra, 223 Conn. 194 n.16, and *State* v. *Niblack,* supra, 220 Conn. 280, expressly authorized

---

[28] In concluding that the plea agreement in this case violated the defendant's due process rights, we emphasize that, under *Bordenkircher* v. *Hayes,* supra, 434 U.S. 357, the *prosecutor* would not have been barred from threatening to *recommend* a greater sentence in the event the defendant refused to plead guilty prior to obtaining a ruling on his motion to suppress. Moreover, if the prosecutor had taken that position, we see no reason why the court would have been prohibited from informing the defendant of the possibility of a greater sentence if he pressed and lost his motion to suppress because, in that event, the prosecutor's hand would be strengthened considerably, and, in addition, the defendant arguably would be entitled to less consideration for his plea than if he had chosen to accept responsibility for the offense at an earlier stage of the proceedings.

judicial participation in plea negotiations. We have not been asked to reconsider our approval of that practice, and we see no cause to do so. Indeed, neither party has brought to our attention any reason to question the propriety of the trial court's offer of an eight year sentence conditioned upon the defendant's plea of guilty and withdrawal of his motion to suppress. Moreover, it would not have been improper for the court, upon learning of the defendant's decision to reject that offer, to inform the defendant of the potential for a greater sentence in the event his motion was denied. In such circumstances, however, it also would be incumbent upon the court to explain why a greater sentence might be appropriate; see footnote 28 of this opinion; to dispel any suggestion that the court was prepared to punish the defendant merely for exercising his right to a judicial determination of his motion. Indeed, the failure of the trial court in this case to provide such an explanation is a critical factor in our conclusion that the court overstepped its constitutional bounds by adding one year to the defendant's sentence.

In light of our determination that the sentence imposed by the trial court runs afoul of the due process clause, we must determine the appropriate remedy. The state maintains that the defendant is entitled either to a new sentencing hearing or, alternatively, to withdraw his nolo contendere plea. The defendant acknowledges that he is not legally entitled to specific performance of the eight year sentence offered by the trial court prior to the denial of his motion to suppress, but claims that we nevertheless should order that remedy in the interest of fairness. We agree with the state.

"When a guilty plea is induced by promises arising out of a plea bargaining agreement, fairness requires that such promises be fulfilled by the state. . . . The same concept of fairness ordinarily impels the court, in its discretion, either to accord specific performance

of the [plea] agreement or to permit the opportunity to withdraw the guilty plea." (Citation omitted.) *State* v. *Littlejohn,* 199 Conn. 631, 644, 508 A.2d 1376 (1986); accord *State* v. *Garvin,* 242 Conn. 296, 313, 699 A.2d 921 (1997); *State* v. *Niblack,* supra, 220 Conn. 283. Moreover, "[t]he validity of plea bargains depends on contract principles." *State* v. *Garvin,* supra, 314. The defendant was not induced to plead guilty by the court's offer of an eight year sentence; indeed, the defendant exercised his right to refuse that offer. In such circumstances, specific performance is not an appropriate remedy because there is no agreement to be enforced.[29] We conclude that the defendant's rights are fully vindicated by the opportunity either to withdraw his nolo contendere plea or to be resentenced on that plea.

The judgment of the Appellate Court is reversed with respect to the defendant's due process challenge to the trial court's imposition of the nine year sentence and the case is remanded to that court with direction to remand the case to the trial court with direction to allow the defendant either to withdraw his plea of nolo contendere or to be resentenced on that plea and for further proceedings in accordance with law.

In this opinion the other justices concurred.

---

[29] By refusing to grant the defendant specific performance of the eight year sentence, we do not suggest that, upon any resentencing, an eight year term of imprisonment would be inappropriate. We intimate no view regarding the appropriate sentence.