******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* JAMES MITCHELL
## (AC 41769)

DiPentima, C. J., and Elgo and Moll, Js.

*Syllabus*

The defendant, who previously had admitted to a violation of probation and been convicted on guilty pleas of two counts of possession of a controlled substance, appealed to this court from the judgment of the trial court denying his amended motion to correct an illegal sentence. In June, 2003, the defendant admitted to a violation of probation, pleaded guilty to two counts of possession of a controlled substance, and entered into a *Garvin* agreement. In October, 2005, the trial court found a *Garvin* violation, revoked the defendant's probation, and sentenced him to six years of incarceration for violating his probation and one year of incarceration for each of the possession charges to be served concurrently. Thereafter, the defendant filed a motion to correct an illegal sentence, which the trial court denied. In his motion, the defendant alleged that the conditions imposed on him by the *Garvin* agreement expired on March 12, 2004, and that the sentence was imposed illegally because he did not receive notice of the October, 2005 sentencing date as required under the applicable rule of practice (§ 43-29). On appeal to this court, the defendant claimed, inter alia, that the sentence was imposed in an illegal manner in violation of *Santobello* v. *New York* (404 U.S. 257) because he was sentenced after the nine month period of the *Garvin* agreement had ended. *Held*:

1. The defendant could not prevail on his claim that the sentence was imposed in an illegal manner in violation of *Santobello*; although the defendant contended that he was to be sentenced within nine months of the plea agreement, there was no indication that the terms of the plea agreement included a requirement that the defendant be sentenced within the nine month period and, during the plea canvass, the trial court recited the terms of the plea agreement twice to the defendant and neither of those recitations included language requiring sentencing to take place within the nine month period.

2. The defendant could not prevail on his claim that the sentence was imposed in an illegal manner because he was not given adequate notice of the sentencing hearing; although the defendant claimed that he did not receive notice of the sentencing hearing, he waived any challenge to notice where, as here, his counsel told the trial court that the defendant was prepared to be sentenced that day, he declined to speak at the hearing, and he expressed no opposition to defense counsel's statement at the hearing.

3. The trial court did not abuse its discretion in denying the motion to correct an illegal sentence, as the defendant's claim that he was not provided the opportunity to be heard or to present evidence at the sentencing hearing was unavailing; defense counsel told the trial court that the defendant was ready to proceed, neither defense counsel nor the defendant protested to the trial court that the defendant was being denied the opportunity to be heard or to present evidence, and the trial court asked the defendant twice if he had anything he would like to say to the trial court during the hearing and in both instances he declined.

4. The defendant's claim that his sentence was illegally imposed because it did not comply with the requirements of Practice Book § 43-29 was unavailing, as the trial court did not abuse its discretion when it concluded that the defendant confused notice for a violation hearing with notice for a sentencing hearing and denied the motion to correct an illegal sentence; although the defendant claimed that, as a probationer, he should have been notified of a revocation of probation hearing, there was no evidence in the record that would allow for an interpretation of the plea agreement in which the defendant could violate the terms of the agreement and still be continued on probation, and the defendant admitted the violation of probation at the time he entered his *Garvin* plea.

Argued October 9, 2019—officially released January 14, 2020

Information, in the first case, charging the defendant with violation of probation, and information, in the second case, charging the defendant with two counts of the crime of possession of a controlled substance, brought to the Superior Court in the judicial district of Hartford, geographical area number fourteen, where the defendant was presented to the court, *Solomon, J.*, on an admission of violation of probation and on pleas of guilty to possession of a controlled substance; thereafter, the court, *Miano, J.*, rendered judgments in accordance with the pleas and sentenced the defendant; subsequently, the court, *Hon. Edward J. Mullarkey*, judge trial referee, denied the defendant's amended motion to correct an illegal sentence, and the defendant appealed to this court. *Affirmed.*

*James E. Mortimer*, assigned counsel, for the appellant (defendant).

*Matthew A. Weiner*, assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Donna Mambrino*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, James Mitchell, appeals from the judgment of the trial court denying his motion to correct an illegal sentence. On appeal, the defendant challenges the trial court's denial of his motion to correct on four grounds: (1) that the sentence was imposed in an illegal manner in violation of *Santobello* v. *New York*, 404 U.S. 257, 262, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971), because the defendant was sentenced after the nine month period of the *Garvin* agreement had ended; (2) that the sentence was imposed in an illegal manner because the defendant was not given adequate notice of the sentencing hearing; (3) that he was denied the opportunity to make a statement or present evidence in violation of Practice Book § 43-10; and (4) that the imposition of the sentence violated Practice Book § 43-29.[1] We disagree and, accordingly, affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On November 14, 1997, the defendant was sentenced to ten years imprisonment, execution suspended after four years, and five years of probation for the underlying crime of robbery in the first degree with a firearm. The defendant's probation began on February 23, 2001. During this probation period, the defendant was arrested, subsequently convicted on or about October 25, 2001, for possession of a controlled substance in violation of General Statutes (Rev. to 2001) § 21a-279 (c) and fined $250. The defendant was incarcerated for failure to pay the fine on March 8, 2002, and later released. The defendant was arrested on March 7, 2002, for possession of narcotics and sale of a controlled substance in violation of General Statutes (Rev. to 2001) § 21a-279 (a) and General Statutes (Rev. to 2001) § 21a-277 (b). On April 19 and 30, 2002, the defendant tested positive for the presence of cocaine in two separate urine samples. On May 13, 2002, the defendant was charged with violating his probation. Subsequently, on or about May 25, 2002, the defendant was arrested for possession of a controlled substance in violation of General Statutes (Rev. to 2001) § 21a-279 (c) and sale of a controlled substance in violation of General Statutes (Rev. to 2001) § 21a-277 (b). The defendant was also charged with possession of a controlled substance for conduct occurring on or about October 17, 2002.

On June 18, 2003, after reaching a *Garvin* agreement with the state,[2] the defendant appeared before the court, *Solomon, J.* At the hearing, the court explained its understanding of the terms of the plea agreement: "Here is the deal as I understand it. You are going to admit [to the violation of probation]. You are going to get random drug screenings. You get one positive and if you fail to show up for a test because you don't want to know what the result is, that failure to show up in my opinion is a positive . . . . You are going to be

working full time and you are not going to commit any more crimes. If you do any of those things in the course of the next nine months, I'm going to bring you back. You are going to get at least the six years that you owe on the violation of probation, and with respect to the other charges, I can do whatever I want. I can run concurrent and I can run consecutive . . . . You make it for nine months, work full time, no crimes, no positive urines, I will continue you on probation at that point in time. Whether you go to jail is entirely in your hands. There is not going to be a negotiation if you come back and you failed. I'm not going to hear about [how] you did pretty good or you did really well for six months. As far as I'm concerned, if you fail, you failed, and you get the six years."

After the defendant admitted to violating his probation and pleaded guilty to two counts of possession of a controlled substance, the court canvassed the defendant and repeated the terms of the plea agreement. "Even though we discussed it on the record, I am going to go through it again with you. The deal, as I understand it, is if you do everything I indicated I expect you to do, no drugs, clean urines, show up for all tests, have full-time regular employment and no more criminal conduct. In other words, don't get arrested for anything. If you do all those things, you are going to come back in nine months and I'm going to continue you on probation. You will still be on probation, but you won't have to serve any jail time as a result of this violation. If you don't do the things that I have told you you have to do, then what's going to happen is I'm not going to wait the nine months. I'm going to bring you back as soon as I find out that there has been a positive urine, or as soon as I find out that you've been arrested, or as soon as I find out that you lose your job. I'm going to bring you back and I am going to sentence you to a minimum of six years, and as much as eight years."

Shortly after this hearing, on August 23, 2003, the defendant was arrested on several felony charges. On September 22, 2005, following a jury trial on these charges, the defendant was convicted of attempt to commit murder in violation of General Statutes §§ 53a-54a, 53a-49 (a) and 53a-8; conspiracy to commit murder in violation of General Statutes §§ 53a-48 (a) and 53a-54a; kidnapping in the first degree in violation of General Statutes §§ 53a-92 (a) (2) (A) and 53a-8; conspiracy to commit kidnapping in the first degree in violation of §§ 53a-48 and 53a-92 (a) (2) (A); sexual assault in the first degree in violation General Statutes §§ 53a-8 and 53a-70 (a) (1); conspiracy to commit sexual assault in the first degree in violation of §§ 53a-48 and 53a-70 (a) (1); assault in the first degree in violation of General Statutes §§ 53a-59 (a) (5) and 53a-8; conspiracy to commit assault in the first degree in violation of §§ 53a-48 (a) and 53a-59 (a) (5); and criminal possession of a firearm in violation of General Statutes (Rev. to 2003)

§ 53a-217 (a) (1).

On October 12, 2005, the defendant was brought before the court, *Miano, J.*, to be sentenced on the violation of probation charge and the two counts of possession of a controlled substance pursuant to the *Garvin* agreement. During the sentencing hearing, the defendant communicated to the court as follows: "I was just called out of the blue to come to court so I, as far as what you're telling me now, is the first thing I am hearing what was going on." Defense counsel then requested a continuance of the hearing. The court met with defense counsel and the prosecutor in chambers to discuss the continuance request. Thereafter, the court continued the case to that afternoon. When the parties returned, defense counsel stated that the defendant "[was] prepared to be sentenced on these matters today." The court heard argument from the state and defense counsel, and the defendant declined to speak. The court found a *Garvin* violation, revoked the defendant's probation and sentenced the defendant to six years of incarceration for violating his probation and one year of incarceration for each of the possession of a controlled substance charges to be served concurrently.

Pursuant to Practice Book § 43-22,[3] the defendant filed a motion to correct an illegal sentence on October 4, 2013, and an amended motion on January 7, 2014. In the memorandum in support of this motion, the defendant argued that the conditions imposed on him by the *Garvin* agreement he entered into on June 18, 2003, expired on March 12, 2004. The defendant also argued that the sentence was imposed illegally because he did not receive notice of the October 12, 2005 sentencing date as required under Practice Book § 43-29.[4]

In opposition, the state contended that (1) the defendant had been thoroughly canvassed and had agreed with the conditions of the plea agreement, (2) he and his attorney knew that sentencing was pending when he was called before the court on October 12, 2005, and (3) the notice procedures of Practice Book § 43-29 were not applicable.

On October 3, 2017, the court issued its written memorandum of decision denying the defendant's motion to correct an illegal sentence. The court noted that during the sentencing hearing, defense counsel told the court that the defendant was "prepared to be sentenced on these matters today." The court further noted that the defendant declined to speak when invited to and was provided with his right to a sentence review. Finally, the court concluded that "[t]he defendant's claim of lack of notice confuses notice of a violation hearing with notice for a sentencing hearing, which was waived by counsel after opportunities to speak with the judge and her client." This appeal followed.

We begin by setting forth the standard of review that guides our analysis. "[A] claim that the trial court improperly denied a defendant's motion to correct an illegal sentence is reviewed pursuant to the abuse of discretion standard." *State* v. *Tabone*, 279 Conn. 527, 534, 902 A.2d 1058 (2006). "In reviewing claims under the abuse of discretion standard, we have stated that the ultimate issue is whether the court could reasonably conclude as it did." (Internal quotation marks omitted.) *State* v. *Fairchild*, 155 Conn. App. 196, 210, 108 A.3d 1162, cert. denied, 316 Conn. 902, 111 A.3d 470 (2015).

I

The defendant first claims that he was sentenced in violation of the United States Supreme Court's decision in *Santobello* v. *New York*, supra, 404 U.S. 262, because the sentencing occurred after the nine month period discussed in the plea agreement. In other words, the defendant argues that he was sentenced in violation of the plea agreement because he was not sentenced on or before March 12, 2004. We disagree.

The United States Supreme Court in *Santobello* held that plea bargains "must be attended by safeguards to insure the defendant what is reasonably due in the circumstances. Those circumstances will vary, but a constant factor is that when a plea rests in any significant degree on a promise or agreement of the prosecutor, so that it can be said to be part of the inducement or consideration, such promise must be fulfilled." Id.

On appeal, the defendant contends that "[o]ne such explicit inducement in this matter was the promise that, whether or not the defendant was compliant with the conditions of his release, he was to be sentenced on or before March 12, 2004." We are not persuaded because the agreement simply does not contain any "such explicit inducement" that the defendant was to be sentenced on or before March 12, 2004, regardless of whether he was compliant with the terms of his release.

"The validity of plea bargains depends on contract principles." *State* v. *Garvin*, 242 Conn. 296, 314, 699 A.2d 921 (1997). Thus, because "a plea agreement is akin to a contract . . . well established principles of contract law can provide guidance in the interpretation of a plea agreement." *State* v. *Lopez*, 77 Conn. App. 67, 77, 822 A.2d 948 (2003), aff'd, 269 Conn. 799, 850 A.2d 143 (2004). Because, however, plea agreements "implicate the waiver of fundamental rights guaranteed to persons charged with crimes, [they] must . . . be evaluated with reference to the requirements of due process." (Internal quotation marks omitted.) *State* v. *Rivers*, 283 Conn. 713, 724, 931 A.2d 185 (2007). Therefore, "[p]rinciples of contract law and special due process concerns for fairness govern our interpretation of plea agreements." (Internal quotation marks omitted.) *State* v. *Stevens*, 278 Conn. 1, 7–8, 895 A.2d 771 (2006).

The plea agreement articulated by the court provided that the defendant was required to remain employed, drug free and free of criminal violations for a period of nine months, or until March 12, 2004. If the defendant were able to comply with these terms for the entire nine month period, he would be eligible to continue his probation. There is no indication that the terms of the plea agreement included a requirement that the defendant be sentenced within the nine month period. During the plea canvass, the court recited the terms of the plea agreement twice to the defendant. Neither of those recitations included language requiring sentencing to take place within the nine month period. Therefore, this claim fails.[5]

II

The defendant also argues that his sentence was imposed illegally because he did not receive notice of the October 12, 2005 hearing. The state counters that the defendant waived any challenge to notice during the sentencing hearing. We agree with the state.

Our Supreme Court has clarified that "waiver is the intentional relinquishment or abandonment of a known right. . . . It is well settled that a criminal defendant may waive rights guaranteed to him under the constitution. [*State* v. *Fabricatore*, 281 Conn. 469, 478, 915 A.2d 872 (2007)]. The mechanism by which a right may be waived, however, varies according to the right at stake. . . . For certain fundamental rights, the defendant must personally make an informed waiver. . . . For other rights, however, waiver may be effected by action of counsel. . . . When a party consents to or expresses satisfaction with an issue at trial, claims arising from that issue are deemed waived and may not be reviewed on appeal. See, e.g., *State* v. *Holness*, 289 Conn. 535, 544–45, 958 A.2d 754 (2008) (holding that defendant waived [his claim] . . . when counsel agreed to limiting instruction regarding hearsay statements introduced by state on cross-examination); *State* v. *Fabricatore*, supra, [481] (concluding defendant waived claim when he not only failed to object to jury instruction but also expressed satisfaction with it and argued that it was proper)." (Citations omitted; internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 71–72, 967 A.2d 41 (2009). "[A]lthough there are basic rights that the attorney cannot waive without the fully informed and publicly acknowledged consent of the client, the lawyer has—and must have— full authority to manage the conduct of the trial. . . . As to many decisions pertaining to the conduct of the trial, the defendant is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts . . . ." (Internal quotation marks omitted.) *State* v. *Kitchens*, 299 Conn. 447, 467–68, 10 A.3d 942 (2011).

During the sentencing hearing before the court,

*Miano, J.*, the defendant first expressed surprise at the purpose of the hearing and counsel requested a continuance. Defense counsel and the prosecutor met with the judge in chambers and following this, the matter was continued to that afternoon. When the parties returned, defense counsel told the court that the defendant "[was] prepared to be sentenced on these matters today." The court later asked the defendant if he wanted to speak before the hearing was concluded, but he declined to do so.

The court, *Hon. Edward J. Mullarkey*, judge trial referee, in its memorandum of decision denying the defendant's motion to correct an illegal sentence, noted how defense counsel expressed to the court that the defendant was prepared to be sentenced. The court also noted how the defendant declined to speak at the hearing.

On appeal, the defendant argues with no support that "[t]here is absolutely no evidence in the record to suggest that the defendant intentional[ly] relinquished or abandoned his right to notice of sentencing, merely that the defendant conversed with counsel." This conclusory argument is belied by the record. It is clear that the defendant's counsel expressed to the court that the defendant was "prepared to be sentenced  . . . ." Defense counsel's statement did not implicate a basic right, such as the right to a jury trial, which would have required his "fully informed and publicly acknowledged consent  . . . ." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Gore*, 288 Conn. 770, 782, 955 A.2d 1 (2008). Further, the defendant expressed no opposition to defense counsel's statement at the hearing. Accordingly, this claim fails.

### III

Next, the defendant argues that he was illegally sentenced because he was not provided with the opportunity to be heard or to present evidence at the sentencing hearing in violation of Practice Book § 43-10.[6] The state argues that the defendant was given the opportunity to do so but declined. We agree with the state.

At the start of the hearing, defense counsel expressed concern that the defendant would be unable to have family with him because he did not have notice of the hearing. As discussed previously in this opinion, however, after the hearing was continued to that afternoon, defense counsel told the court that the defendant was ready to proceed. Neither defense counsel nor the defendant protested to the court that the defendant was being denied the opportunity to be heard or present evidence. Further, the court asked the defendant twice if he had anything he would like to say to the court during the hearing.[7] In both instances, the defendant declined. Accordingly, upon review of the record, we conclude that the court did not abuse its discretion in

denying the motion on this ground.

## IV

The defendant's final argument is that the sentence was illegally imposed because it did not comply with the requirements of Practice Book § 43-29. The state argues that the procedure of § 43-29 is not applicable to the sentencing hearing of October 12, 2005. We agree with the state.

Practice Book § 43-29 sets forth the procedure for a revocation of probation hearing when the revocation is based on a new criminal offense. The defendant argues that because he was not sentenced by March 12, 2004, he was continued "sub silencio" on probation thereafter. Accordingly, he argues, as a probationer, the defendant should have been notified of a revocation of probation hearing pursuant to § 43-29. This claim is without merit.

As discussed previously in this opinion, there is nothing in the record that indicates that the plea agreement required that the defendant be sentenced before March 12, 2004. Thus, there is no support for the defendant's claim that because he was not sentenced before March 12, 2004, he was automatically continued on probation. This reading of the plea agreement is contrary to the purpose of the *Garvin* agreement and is wholly contradicted by the record. During the plea canvass on June 18, 2003, the defendant agreed that if, and only if, he did not commit any criminal violations, and remained employed and drug free for nine months, would he be continued on probation. As discussed previously, there is no evidence in the record that would allow for an interpretation of the agreement in which the defendant could violate the terms of the agreement and still be continued on probation. Further, the defendant admitted the violation of probation at the time he entered his *Garvin* plea. The court did not abuse its discretion when it concluded that the defendant "confuse[d] notice for a violation hearing with notice for a sentencing hearing" and denied the motion to correct an illegal sentence. Accordingly, this claims fails.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] Although Practice Book § 43-29 was amended in 2017, those amendments have no bearing on the merits of this appeal. In the interest of simplicity, we refer to the current version of that rule.

[2] "A *Garvin* agreement is a conditional plea agreement that has two possible binding outcomes, one that results from the defendant's compliance with the conditions of the plea agreement and one that is triggered by his violation of a condition of the agreement." *State* v. *Stevens*, 278 Conn. 1, 7, 895 A.2d 771 (2006).

[3] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[4] Practice Book § 43-29 provides in relevant part: "In cases where the revocation of probation is based upon a conviction for a new offense and the defendant is before the court or is being held in custody pursuant to

that conviction, the revocation proceeding may be initiated by a motion to the court by a probation officer and a copy thereof shall be delivered personally to the defendant. All other proceedings for revocation of probation shall be initiated by an arrest warrant supported by an affidavit or by testimony under oath showing probable cause to believe that the defendant has violated any of the conditions of the defendant's probation or his or her conditional discharge or by a written notice to appear to answer to the charge of such violation, which notice, signed by a judge of the Superior Court, shall be personally served upon the defendant by a probation officer and contain a statement of the alleged violation. . . ."

[5] The defendant's additional argument that the state "waived" its right to have him sentenced because he was not sentenced within the nine month period also fails. Because there was no requirement in the plea agreement that the court sentence the defendant on or before March 12, 2004, there was no requirement for the state to waive.

[6] Practice Book § 43-10 provides in relevant part: "Before imposing a sentence or making any other disposition after the acceptance of a plea of guilty or nolo contendere or upon a verdict or finding of guilty, the judicial authority shall, upon the date previously determined for sentencing, conduct a sentencing hearing as follows: (1) The judicial authority shall afford the parties an opportunity to be heard and, in its discretion, to present evidence on any matter relevant to the disposition . . . . (2) The judicial authority shall allow the victim and any other person directly harmed by the commission of the crime a reasonable opportunity to make, orally or in writing, a statement with regard to the sentence to be imposed. . . . "

[7] Our Supreme Court determined that a right of allocution exists during the disposition phase of a violation of probation proceeding. *State* v. *Strickland*, 243 Conn. 339, 354, 703 A.2d 109 (1997). Thus, the court properly provided the defendant with the opportunity to address the court. The defendant, however, declined to exercise that right.