******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* ANTHONY SINCHAK
## (AC 42348)

Lavine, Elgo and Palmer, Js.*

*Syllabus*

The defendant, who had been convicted of murder and two counts of kidnapping in the first degree, appealed to this court from the judgment of the trial court denying his motion to correct an illegal sentence. The judge who presided over the defendant's probable cause hearing offered the defendant a plea deal at a pretrial conference, proposing a thirty year term of imprisonment if the defendant agreed to plead guilty to murder. The defendant rejected the deal and it was withdrawn. A jury found the defendant guilty of all charges and, at his sentencing hearing, the judge who had presided over the trial imposed a sentence of sixty years of imprisonment on the murder count and eighteen years on each of the kidnapping counts, to run consecutively, for a total effective sentence of ninety-six years of imprisonment. The defendant filed an application with the sentence review division of the Superior Court, requesting a reduction of his sentence, which he claimed was excessive. His request was denied and the sentence was upheld. The defendant then filed a motion to correct an illegal sentence, claiming that, by imposing a sentence substantially longer than that which was proposed pretrial, the sentencing judge was punishing the defendant for rejecting the plea deal and, in doing so, violated the defendant's constitutional right to due process. Following a hearing, the trial court denied the defendant's motion and the defendant appealed to this court. *Held* that the trial court properly denied the defendant's motion to correct an illegal sentence because the record did not contain any indication of vindictiveness on behalf of the sentencing judge: the fact that the length of the sentence imposed greatly exceeded the length of the sentence proposed prior to trial did not give rise to an inference of vindictiveness when the record was considered as a whole, including the defendant's background, his long and violent criminal history, and evidence that the defendant posed such a grave danger to the community that he should spend the remainder of his life in prison; moreover, there were legitimate bases for the disparity between the sentence proposed pretrial and the sentence imposed posttrial, including that the trial provided the sentencing judge with the opportunity to gain a greater appreciation of the evidence and of the effect of the defendant's actions on his victims and their families, that a guilty plea would have shown evidence of the defendant's willingness to accept responsibility for his crimes, which is a mitigating factor for sentencing, whereas his refusal to accept responsibility even after his trial demonstrated a lack of remorse and dim prospects for rehabilitation, and that the sentences were considered by two different judges, with different sentencing philosophies and priorities, at different stages of the case; furthermore, the sentencing judge was not required to expressly disavow a vindictive or retaliatory motive for the sentencing because the facts of the case did not give rise to a presumption of vindictiveness.

Argued October 6, 2020—officially released June 22, 2021

*Procedural History*

Substitute information charging the defendant with one count of the crime of murder and two counts of the crime of kidnapping in the first degree, brought to the Superior Court in the judicial district of Waterbury and tried to the jury before *Murray, J.*; verdict and judgment of guilty; thereafter, the court, *Hon. Ronald D. Fasano*, judge trial referee, denied the defendant's motion to correct an illegal sentence, and the defendant appealed to this court. *Affirmed.*

*W. Theodore Koch III*, assigned counsel, for the appellant (defendant).

*Ronald G. Weller*, senior assistant state's attorney, with whom, on the brief, were *Maureen Platt*, state's attorney, and *John J. Davenport*, senior assistant state's attorney, for the appellee (state).

*Opinion*

PALMER, J. The defendant, Anthony Sinchak, appeals from the judgment of the trial court, *Hon. Ronald D. Fasano*, judge trial referee, denying his motion to correct an illegal sentence, which, he claims, was imposed in violation of his right to due process guaranteed by the fourteenth amendment to the United States constitution.[1] The defendant contends that the trial court improperly rejected his claim that the ninety-six year prison sentence he received in 1995, after a jury found him guilty of murder and kidnapping, was imposed in retaliation for his refusal to forgo a trial and accept a plea deal, offered at a judicial pretrial conference by the judge who conducted the conference, pursuant to which he would be sentenced to a term of imprisonment of thirty years if he agreed to plead guilty to the murder charge. We disagree with the defendant's claim and, accordingly, affirm the judgment of the trial court.

The following undisputed facts and procedural history are relevant to our resolution of this appeal. On August 4, 1992, the state charged the defendant with one count of murder in violation of General Statutes § 53a-54a and two counts of kidnapping in the first degree in violation of General Statutes § 53a-92 (a) (2) (B); the defendant subsequently pleaded not guilty to all three counts. On September 23, 1992, a probable cause hearing was held on the murder charge, following which the court, *Kulawiz, J.*, made a finding of probable cause to proceed on that charge. A judicial pretrial conference was conducted on January 24, 1995, at which Judge Kulawiz extended a plea offer to the defendant of a sentence of thirty years of imprisonment in exchange for his guilty plea to murder. The defendant rejected the offer, however, and it was withdrawn. Several days later, the case proceeded to a trial by jury, *Murray, J.*, presiding.

At trial, the state adduced evidence that, in the early morning hours of July 27, 1992, the defendant was at the Freight Street Social Club, an illegal after-hours social club in Waterbury, when he shot and killed Kathleen Gianni, a bartender there, because he suspected Gianni of being a police informant against several members of the Helter Skelter Motorcycle Club, of which the defendant was a member. In an effort to secure the silence of two witnesses to the shooting, Jo Orlandi and Laura Ryan, the defendant threatened and abducted them at gunpoint and did not release them until the next day. The defendant later disposed of Gianni's body and attempted to burn down the social club. On the basis of that evidence, the jury found the defendant guilty as charged, and Judge Murray rendered judgment in accordance with the jury's verdict.

The defendant's sentencing hearing took place on

July 20, 1995. Before imposing sentence, Judge Murray reviewed a five page written statement signed and submitted by the defendant that made three primary points: (1) the defendant was innocent of the charges notwithstanding the guilty verdicts; (2) the state's case against him was unreliable and based on knowingly false and coerced testimony; and (3) a sentence greater than the thirty years that, he asserted, he had been offered by the state in return for pleading guilty to murder, would constitute impermissible retaliation for exercising his right to a trial.[2]

Judge Murray then heard remarks from the state as well as from Gianni's mother and daughter. On behalf of the state, the prosecutor first made reference to the presentence investigation report (PSI), explaining that it conveyed "a sense of [the defendant as] a man who possesses a most dangerous combination of character traits . . . in that [he] appears to be set off with little or no provocation . . . he appears obsessed with weapons, and . . . he appears to repeatedly put himself above the law." The PSI also revealed that the defendant had compiled a lengthy criminal record over more than two decades, which, the prosecutor explained, consisted of a "variety of offenses primarily involving weapons and assaultive, violent behavior," some of which entailed "armed . . . attack[s] [against] defenseless individuals," including "complete strangers . . . who simply had the misfortune of running into the defendant on the street." According to the prosecutor, the defendant's record "illustrates a . . . man [who is] not a stranger to the court system. He has been given the opportunity to straighten out his life time and time again. He's been fined a total of nine times. He has been given probation five times. He has had a taste of jail twice. All of those to no avail. The first step in rehabilitation . . . is to admit your wrongdoing and accept responsibility for your actions. To this day, the defendant has not even taken that first step. . . . [H]is refus[al] to do so in the face of the evidence against him and the rarity of having two eyewitnesses [Orlandi and Ryan] . . . relate [to the jury] the horrific details of his crimes, illustrate[s] most clearly his continuing refusal to acknowledge his antisocial behavior."

The prosecutor next spoke about the offenses of which the defendant had been convicted, explaining that they included the defendant's "brutal ambush" of Gianni, whom he shot multiple times. As the prosecutor further explained, when the defendant learned, from Gianni's moaning, that the first shots had not killed her, he walked closer to her, stood directly over her body, and fired three more shots. At that point, realizing that Orlandi and Ryan had witnessed the entire incident, the defendant turned his gun on them and threatened to kill them if they said anything about the shooting. Although they tried to convince the defendant that they would not do so, the defendant abducted and held them

and did not free them until the next day.

The prosecutor concluded his remarks by stating: "The defendant's actions on that day speak of a total disregard of human life. Not only for the life he took but for the lives of [Gianni's family] that were devastated and the lives of the eyewitnesses who are now permanently [scarred] by having to relive this murderous nightmare forever. Jo Orlandi and Laura Ryan related their ordeal at the trial and have made their remarks in the PSI. Both indicated their positive belief that they would be the next to be killed. And three years later as we look at their lives they . . . both have lives where they must continuously look over their shoulders. . . .

"Kathleen Gianni was a woman in the prime years of her life. She was close to her family. She had friends and she had every reason and every right to live out all of the years to which she was entitled. At the time of her death Miss Gianni had a seventeen year old daughter, a daughter who testified at trial, a daughter that has been left to forge into the world without her mother's advice, without her care and without her guiding hand. Kathleen Gianni may never have realized what she lost because of the defendant, but it's her family which lives that loss and suffers the consequences and anguish every day."

Gianni's mother and daughter next addressed the court. They spoke lovingly of her and poignantly of their unbearable loss, explaining how their lives and the lives of other family members had been profoundly and permanently affected by her shocking, senseless and tragic death at the hands of the defendant. Both women requested that the defendant be sentenced to the maximum term of imprisonment of 110 years.

The prosecutor then spoke again briefly, underscoring that the defendant's "crimes could not be more heinous or offensive to our judicial process" and expressing the state's view that a severe sentence was warranted because, inter alia, the defendant had killed Gianni for "speak[ing] up and cooperat[ing] against criminal activity . . . ." The prosecutor further informed Judge Murray that the state also was seeking the imposition of the maximum possible sentence of 110 years. He stated that he hoped that such a sentence would "bring some sense of peace for the family of Kathleen Gianni, some sense of security for Jo Orlandi and Laura Ryan and some protection for all of the people who [comprise] the city of Waterbury."

Finally, the prosecutor stated with respect to the statement that the defendant had submitted to the court: "[T]he defendant refers to a plea agreement which was offered to him by the state and that agreement never occurred. It was never offered by the state. That particular [thirty year] amount which is stated was

offered by one of the courts that was involved in plea agreement negotiations and it is my belief that that is a matter that should not be considered by the sentencing court who'll make his determination on the facts and the evidence that were presented and not on the interest in moving cases prior to their trial."

Judge Murray then asked the defendant if he wished to address the court. The defendant declined, stating only that, "I have nothing to say outside of what's in my statement there." Judge Murray responded: "I've read your statement and I understand what you say. I'll rely upon the body of evidence that I received and that the jury has deemed credible in terms of rendering these verdicts here against you."[3]

Before imposing sentence, Judge Murray made the following statement: "Well then, Mr. Sinchak, it becomes my awesome duty to impose sentence here in the case involving the rendition of verdicts of murder and kidnapping against you—kidnapping in the first degree. The evidence presented during this trial, Mr. Sinchak, persuaded the jury to find you guilty of murder—[of] the murder of Kathleen Gianni and also kidnapping—guilty of kidnapping in the first degree of Jo Orlandi and Laura Ryan.

"This court after having heard all the evidence presented is of the opinion that the killing of Kathleen Gianni by you was a premeditated, heartless and cold-blooded murder. Also, the kidnapping of Jo Orlandi and Laura Ryan at gunpoint puts each of those two women in real and substantial fear of losing their own lives and, of course, denied them the opportunity to come to the aid of the victim, Kathleen Gianni. The body of evidence received by the court during this trial, the presentence investigation reports submitted by the probation officer and your past record of convictions reveals you, Mr. Sinchak, to this court to be a man given to violence to solve your problems with others, with little respect of the lives of other human beings. Based on what has been presented to me at this time, this body of evidence, I am reluctant but persuaded to say that you should never again be a free man." Judge Murray thereupon sentenced the defendant to consecutive prison terms of sixty years on the murder count and eighteen years on each of the kidnapping counts, for a total effective sentence of ninety-six years of imprisonment.[4]

The defendant appealed and this court affirmed the judgment of conviction. *State* v. *Sinchak*, 47 Conn. App. 134, 136, 703 A.2d 790 (1997), appeal dismissed, 247 Conn. 440, 721 A.2d 1193 (1999), cert. denied, 319 Conn. 926, 125 A.3d 201 (2015). Our Supreme Court granted the defendant's petition for certification; see *State* v. *Sinchak*, 243 Conn. 964, 707 A.2d 1266 (1998), appeal dismissed, 247 Conn. 440, 721 A.2d 1193 (1999);[5] but subsequently determined that the petition had been

improvidently granted and, accordingly, dismissed the appeal. See *State* v. *Sinchak*, 247 Conn. 440, 442, 721 A.2d 1193 (1999) (per curiam).

The defendant thereafter filed an application with the sentence review division of the Superior Court under General Statutes § 51-195 seeking a reduction of his sentence on the ground that it was excessive. The sentence review division denied the defendant's request, however, and upheld his sentence. See *State* v. *Sinchak*, Superior Court, judicial district of Waterbury, Docket No. CR-92-207969 (November 23, 2004). In reaching its decision, the sentence review division observed that "[t]he sentencing court was privy to the detailed, explicit testimony of a gangland execution. All the facts [and] surrounding circumstances leading up to this offense were carefully considered by the sentencing court. Moreover, the sentencing court was well aware [that] the [defendant's] criminal history dated back to 1973 and was replete with crimes of violence. The [sentencing] court had no doubt [the defendant] would never conform his behavior and sentenced him accordingly. . . . The sentence imposed was neither inappropriate [n]or disproportionate."[6] Id.

On August 18, 2017, the defendant filed a motion as a self-represented party under Practice Book § 43-22[7] to correct his allegedly illegal sentence. He thereafter was appointed counsel, who filed an amended motion to correct, which the state opposed. In support of his motion, the defendant filed a number of exhibits, including the transcript of the July 20, 1995 sentencing hearing, the PSI that had been prepared for purposes of that sentencing, the written statement that the defendant submitted to the court at the time of sentencing, a transcript of the probable cause hearing conducted on September 25, 1992, and the written decision of the sentence review division dated November 23, 2004.

On September 14, 2018, the trial court[8] heard argument on the defendant's motion to correct.[9] The defendant asserted that the ninety-six year sentence imposed by Judge Murray was "unconscionable" because it was so much greater than the offer of thirty years that had been made to him by Judge Kulawiz, who, the defendant further maintained, understood the gravity of the defendant's offenses and was aware of his extensive criminal history because she had conducted the defendant's probable cause hearing and had available to her a prior PSI relating to the defendant.[10] According to the defendant, the ninety-six year prison term "amount[ed] to vindictive sentencing to punish [him] not just for the crime but for electing to exercise his state and federal constitutional right to a jury trial and therefore is an illegal sentence." In response, the state, after underscoring the fact that the defendant himself had alerted Judge Murray of Judge Kulawiz's offer, asserted that there was nothing in the record to substantiate the defen-

dant's claim that Judge Murray, in imposing a sentence substantially longer than that offered by Judge Kulawiz, was punishing the defendant for rejecting the proposed plea deal.

Following the hearing, the trial court denied the defendant's motion in a memorandum of decision dated September 24, 2018. That decision reads in its entirety as follows:

"By way of [his] amended motion to correct [an] illegal sentence, [the defendant] claims that his sentence of ninety-six years, imposed after convictions by jury, was imposed vindictively and in an illegal manner, since the presiding judge at pretrial had offered a sentence of thirty years for a plea to one count of murder.

"[The defendant] cites *North Carolina* v. *Pearce*, 395 U.S. 711 [89 S. Ct. 2072, 23 L. Ed. 2d 656 (1969) (adopting rebuttable presumption of judicial vindictiveness if court imposes more severe sentence on defendant following retrial after defendant's successful appeal from conviction at original trial)] and *Alabama* v. *Smith*, 490 U.S. 794 [109 S. Ct. 2201, 104 L. Ed. 2d 865 (1989) (*Pearce* presumption of vindictiveness inapplicable to greater sentence imposed after jury trial following successful challenge to guilty plea; presumption applies only when circumstances show reasonable likelihood that increased sentence is product of actual vindictiveness)] in support of [his] position that he was penalized for exercising his federal and state constitutional right by going to trial. Additionally, [the defendant] claims he was, further, penalized when the state, for the purposes of trial, added additional counts of kidnapping.[11]

"*Pearce* and *Smith* involve situations where, following successful appeals, [defendants] were retried and convicted and resentenced to greater sentences than they received when first convicted, without any change in circumstances that would have warranted the more severe sentences.

"Here, [the defendant] had been offered a significantly discounted pretrial number of thirty years to serve for one count of murder by the presiding judge, *Kulawiz, J.*, in order to resolve the case and avoid putting the families and victims through, what was sure to be, a terrific ordeal at trial given the alleged factual scenario.

"[The defendant] rejected the offer and the state, as is its right, added, prior to trial, other counts it believed it could prove at trial. [The defendant] was convicted of all counts. The sentencing court, *Murray, J.*, set out in detail the reasons for imposing its sentence of ninety-six years; a sentence that comes as no surprise to anyone who heard or read the trial testimony in this case. Judge Murray was aware of the pretrial offer only because it was brought to his attention by the [defendant] himself. Clearly, it played no role in determining

the sentence imposed based on the court's sentencing remarks.

"There is absolutely no evidence of vindictiveness on the part of the sentencing judge nor is there support for the proposition that the state was vindictive for filing, pretrial, additional charges it could prove in preparation for trial. Petition is denied." (Footnote added.) This appeal followed.

The defendant claims on appeal that the trial court improperly rejected his contention regarding the constitutional impropriety of the sentence imposed by Judge Murray.[12] In the defendant's view, "the sheer magnitude" of that ninety-six year sentence "raises the inference that [it] was [imposed] vindictive[ly]" to punish the defendant for refusing Judge Kulawiz's offer and, because Judge Murray "never explicitly disavowed a retaliatory intent" in imposing that lengthy sentence, he is entitled to a new sentencing hearing. The state contends that the defendant's claim is without merit because the trial court correctly concluded that the record contains no indication whatsoever of any such vindictiveness on the part of Judge Murray. We agree with the state.[13]

We begin by setting forth the applicable standard of review. "[A] claim that the trial court improperly denied a defendant's motion to correct an illegal sentence [ordinarily] is reviewed pursuant to the abuse of discretion standard. . . . In reviewing claims under [that] standard, we have stated that the ultimate issue is whether the court could reasonably conclude as it did." (Citation omitted; internal quotation marks omitted.) *State* v. *Mitchell*, 195 Conn. App. 199, 206, 224 A.3d 564, cert. denied, 334 Conn. 927, 225 A.3d 284 (2020). Thus, for purposes of determining whether the trial court properly denied the motion to correct, "great weight is given to the trial court's decision and every reasonable presumption is given in favor of its correctness." (Internal quotation marks omitted.) *State* v. *Anderson*, 187 Conn. App. 569, 584, 203 A.3d 683, cert. denied, 331 Conn. 922, 206 A.3d 764 (2019).

The principles governing claims of judicial vindictiveness in sentencing are well established. "[A] trial court possesses, within statutorily prescribed limits, broad discretion in sentencing matters. On appeal, we will disturb a trial court's sentencing decision only if that discretion clearly has been abused. . . . In exercising its discretion, the trial court may appropriately conduct an inquiry broad in scope, largely unlimited either as to the kind of information [it] may consider, or the source from which it may come. . . . A defendant's demeanor, criminal history, [PSI], prospect for rehabilitation and general lack of remorse for the crimes of which he has been convicted are all factors that the court may consider in fashioning an appropriate sentence." (Citations omitted; internal quotation marks

omitted.) *State* v. *Angel M.*,    Conn.    ,    ,    A.3d. (2020).

Nevertheless, "the trial court's discretion in regard to sentencing is not unfettered. . . . [A] [sentencing] court generally is not prohibited from denying leniency to a defendant who elects to exercise a statutory or constitutional right. . . . Principles of due process, however, forbid a court from retaliating against a defendant by increasing his sentence merely because of the exercise of such a right." (Citations omitted.) Id.,    ; see also *State* v. *Revelo*, 256 Conn. 494, 513, 775 A.2d 260 ("[a]lthough a court may deny leniency to an accused who . . . elects to exercise a statutory or constitutional right, a court may not penalize an accused for exercising such a right by increasing his or her sentence solely because of that election"), cert. denied, 534 U.S. 1052, 122 S. Ct. 639, 151 L. Ed. 2d 558 (2001); *State* v. *Kelly*, 256 Conn. 23, 81, 770 A.2d 908 (2001) ("the [a]ugmentation of sentence based on a defendant's decision to stand on [his or her] right to put the [state] to its proof rather than plead guilty is clearly improper" (internal quotation marks omitted)). Although the United States Supreme Court has identified a narrow category of cases in which a rebuttable presumption of vindictiveness attaches when the court imposes a greater sentence on the defendant following his retrial after a successful appeal;[14] see *North Carolina* v. *Pearce*, supra, 395 U.S. 726; as a general rule, the defendant bears the burden of demonstrating, on the basis of the totality of the circumstances, that the court increased his sentence as punishment for exercising his right to a trial. See, e.g., *State* v. *Kelly*, supra, 82. In other words, ordinarily, a defendant must prove actual vindictiveness on the part of the sentencing court. See *Wasman* v. *United States*, 468 U.S. 559, 569, 104 S. Ct. 3217, 82 L. Ed. 2d 424 (1984) ("where the presumption does not apply, the defendant must affirmatively prove actual vindictiveness"). As the defendant acknowledges, that is the burden that he shoulders in the present case.[15]

The merits of the defendant's claim can best be evaluated by first identifying what he does not claim. He does not contend that Judge Murray participated in any plea discussions with the defendant, nor does he maintain that the state played any role in alerting Judge Murray to the terms of the plea deal that Judge Kulawiz offered to him. Indeed, the defendant acknowledges that he alone brought the proposed plea arrangement to Judge Murray's attention and that Judge Murray otherwise would have had no knowledge of that proposal.[16] Finally, the defendant does not maintain that the ninety-six year sentence imposed by Judge Murray was excessive as a matter of law, either on the ground that it was impermissibly severe or because it was so much longer than the sentence offered by Judge Kulawiz. His claim, rather, is a much narrower one, namely, that the sen-

tence gives rise to an inference of vindictiveness that could have been overcome only by an explicit statement by Judge Murray at the time of sentencing that he was not punishing the defendant for refusing the plea deal. In other words, the defendant makes no claim that Judge Murray's sentence was improper in any way except insofar as Judge Murray, having been made aware of the plea offer tendered by Judge Kulawiz, did not affirmatively state that he was not penalizing the defendant for exercising his right to a trial.

With respect to the defendant's underlying contention that Judge Murray's sentence gives rise to an inference of vindictiveness, the defendant asserts that such an inference is warranted by two considerations: first, the severity of the sentence actually imposed as compared to the sentence offered under the proposed plea agreement and second, that, according to the defendant, "[n]o material considerations that were available to [Judge Murray] were *not* available to [Judge Kulawiz]." (Emphasis in original.) With respect to the defendant's further assertion that Judge Murray was required to expressly disavow a vindictive or retaliatory motive, the defendant argues that Judge Murray's failure to make such a statement leaves the inference of excessiveness unrebutted, thereby entitling him to a new sentencing hearing.

The primary flaw in the defendant's argument is that, in light of the totality of the circumstances, there is no valid reason to assign an improper motive to Judge Murray due to the length of the sentence he imposed relative to the length of the sentence offered by Judge Kulawiz.[17] There is no doubt that the sentence the defendant received far exceeds the sentence proposed by Judge Kulawiz. On the basis of the record as a whole, however, that fact simply does not give rise to an inference of vindictiveness. Indeed, it appears quite clear from the record that Judge Murray gave no consideration to the thirty year offer extended by Judge Kulawiz in imposing the sentence that he did. As we have explained, after the defendant submitted his written statement informing Judge Murray of that offer, the prosecutor stated that the proposed plea bargain was a matter "that should not be considered by" Judge Murray, who, the prosecutor further asserted, should "make his determination on the facts and the evidence that were presented . . . ." The defendant then declined Judge Murray's invitation to address the court, stating that he had nothing to add to his written statement, to which Judge Murray responded: "I've read your statement and I understand what you say. I'll rely upon the body of evidence that I received and that the jury has deemed credible in terms of rendering these verdicts here against you." That brief colloquy indicates quite clearly that Judge Murray agreed with the state that the plea deal offered by Judge Kulawiz had no bearing on the appropriate sentence, which, consistent with the

position of the prosecutor, was to be based solely on the relevant facts and the evidence.

This reading of the record is buttressed by Judge Murray's relatively brief sentencing remarks, in which he characterized the murder of Gianni as "premeditated, heartless and cold-blooded" and the "kidnapping[s] of Jo Orlandi and Laura Ryan at gunpoint" as having placed "those two women in real and substantial fear of losing their own lives . . . ." Judge Murray then explained that the sentence he was about to impose—a sentence that, he stated, was designed to ensure that the defendant would "never again be a free man" because he was "given to violence" and had "little respect [for] the lives of other human beings"—was based on "[t]he body of evidence received by the court during this trial, the presentence investigation reports submitted by the probation officer and your past record of convictions . . . ." There is not the slightest suggestion in Judge Murray's comments that he imposed his sentence on the basis of anything but entirely proper considerations, and it is apparent that the lengthy term of imprisonment that he ultimately imposed was predicated on his belief, reasonably founded on the evidence and the defendant's background, including the defendant's long and violent criminal history, that the defendant posed such a grave danger to the community that he should spend the remainder of his life in prison.[18]

It is true that Judge Kulawiz extended her plea offer to the defendant after having presided over the defendant's probable cause hearing,[19] and Judge Kulawiz also had available to her a PSI prepared in connection with certain other offenses that the defendant had committed some time prior to the offenses that are the subject of this appeal. Under the circumstances, however, the fact that Judge Kulawiz believed that a thirty year sentence was appropriate for purposes of a plea bargain has no bearing on the propriety of the sentence imposed by Judge Murray following a trial. Because that trial lasted approximately one month, and the probable cause hearing was completed in just one day, Judge Murray had the opportunity to gain a much fuller appreciation of the defendant's offenses than did Judge Kulawiz, and the PSI reviewed by Judge Murray was more recent and more comprehensive than the PSI that was available to Judge Kulawiz. In addition, at trial, Judge Murray heard extensive firsthand testimony from both of the kidnapping victims and, at sentencing, he learned about the impact of Gianni's death from the compelling in-court statements of her mother and daughter, thereby enabling Judge Murray to gauge the devastating effect of the defendant's offenses on the victims and their families. Furthermore, and significantly, a plea of guilty to murder in accordance with Judge Kulawiz's offer would have evinced the defendant's willingness to accept responsibility for his horrific crimes, an important mitigating factor for sentenc-

ing purposes, whereas his refusal to take any such responsibility following his trial spoke of a complete lack of remorse for those crimes and reflected adversely on his already dim prospects for rehabilitation. Finally, the fact that different judges, with different sentencing philosophies and priorities, were involved at two entirely different stages of the defendant's case, provides further support for the conclusion that the propriety of the ninety-six year sentence imposed by Judge Murray after trial cannot be evaluated on the basis of the thirty year offer made to the defendant by Judge Kulawiz as part of a proposed plea bargain. These considerations, when coupled with the defendant's long history of and propensity for violence, provided a legitimate basis for the disparity in the sentence offered by Judge Kulawiz and the sentence imposed by Judge Murray. Put differently, these factors belie the defendant's claim that the disparity reasonably may be attributed to a vindictive motivation on the part of Judge Murray.

The defendant relies on a number of cases from other jurisdictions to support his claim that, even in the absence of a presumption of vindictiveness, Judge Murray was required to explicitly disavow any such vindictive or retaliatory motive. Those cases are inapposite for several reasons, most significantly because in each such case, the sentencing judge had been actively involved in the plea discussions that took place before trial and the record was devoid of any nonvindictive reason why the sentence imposed by that same judge following a trial was so much greater than the sentence that had been offered and rejected. See *United States* v. *Stockwell*, 472 F.2d 1186, 1187 (9th Cir.) (following trial, court sentenced defendant to seven years of imprisonment, having informed defendant prior to trial that he would receive three year sentence if he pleaded guilty but would receive sentence of between five and seven years if he chose to stand trial; court violated defendant's right to due process by placing such burden on his decision to stand trial), cert. denied, 411 U.S. 948, 93 S. Ct. 1924, 36 L. Ed. 2d 409 (1973); *Longley* v. *State*, 902 So. 2d 925, 930 (Fla. App. 2005) (defendant's due process rights were violated when court initiated plea negotiations and offered plea deal to defendant, who rejected offer, and then, following trial, court imposed sentence five times greater than pretrial offer without placing reasons for harsher sentence on record); *Cambridge* v. *State*, 884 So. 2d 535, 538 (Fla. App. 2004) (after engaging in plea negotiations with defendant and urging him to accept plea offer of time served, court violated defendant's right to due process when, after defendant rejected proposed deal, court imposed seven year sentence following trial with no explanation of grounds for sentence); *People* v. *Dennis*, 28 Ill. App. 3d 74, 78, 328 N.E.2d 135 (1975) (inference of constitutional violation was drawn when court partic-

ipated in pretrial conference at which defendant was offered plea deal of not more than two to six years of imprisonment and, after defendant rejected deal and was convicted following trial, court sentenced defendant to forty to eighty years of imprisonment, with no explanation for harshness of sentence); *People* v. *Morton*, 288 App. Div. 2d 557, 557–59, 734 N.Y.S.2d 249 (2001) (due process violation existed when, prior to trial, court offered plea deal to defendant of indeterminate term of imprisonment of two to four years in return for guilty plea, which defendant rejected, and then, upon defendant's conviction after trial, court sentenced defendant to indeterminate term of imprisonment of twelve and one-half to twenty-five years, because record contained nothing to justify substantial disparity between pretrial offer and sentence actually imposed), appeal denied, 97 N.Y.2d 758, 769 N.E.2d 365, 742 N.Y.S.2d 619, cert. denied, 537 U.S. 860, 123 S. Ct. 237, 154 L. Ed. 2d 99 (2002); *People* v. *Patterson*, 106 App. Div. 2d 520, 521, 483 N.Y.S.2d 55 (1984) (record established that, in imposing sentence, trial court impermissibly increased defendant's punishment solely for asserting his right to trial). Under the facts of those cases, a presumption or inference of vindictiveness was appropriate; in the present case, by contrast, no such presumption or inference is warranted in light of the totality of the circumstances.[20] Because the facts do not give rise to an inference of vindictiveness, the defendant had no right or reason to expect that Judge Murray would, sua sponte, expressly disavow a vindictive or retaliatory motive. Accordingly, we conclude that the trial court properly denied the defendant's motion to correct an illegal sentence.

The judgment is affirmed.

In this opinion the other judges concurred.

[*] The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The fourteenth amendment to the United States constitution provides in relevant part: "No State shall . . . deprive any person of life, liberty, or property, without due process of law . . . ."

[2] The defendant's assertion that the *state* had offered him the plea deal was incorrect; rather, it was Judge Kulawiz who made that offer.

[3] At no time did defense counsel address the court on behalf of the defendant.

[4] Judge Murray also sentenced the defendant for certain offenses unrelated to the present case, in particular, one count of assault in the second degree and three counts of reckless endangerment in the first degree. Those sentences, which, in accordance with a plea agreement between the defendant and the state, were imposed to run concurrently with the total effective sentence of ninety-six years imposed in the present case, are not at issue in this appeal.

[5] The grant of certification by our Supreme Court was limited to two issues unrelated to the issue raised by this appeal.

[6] Commencing in 2000, the defendant also sought habeas corpus relief, claiming, inter alia, that his sentence was unduly severe. *Sinchak* v. *Warden*, Superior Court, judicial district of Tolland, Docket No. CV-00-0800827-S (June 29, 2007), appeal dismissed, *Sinchak* v. *Commissioner of Correction*, 126 Conn. App. 670, 14 A.3d 348, cert. denied, 301 Conn. 901, 17 A.3d 1045 (2011). The habeas court rejected the defendant's contention, however, on both procedural and substantive grounds. Id. Although the defendant appealed from the judgment of the habeas court to the Appellate Court,

which rejected his claims; see *Sinchak* v. *Commissioner of Correction*, 126 Conn. App. 670, 671, 14 A.3d 348, cert. denied, 301 Conn. 901, 17 A.3d 1045 (2011); he did not challenge the habeas court's decision with respect to his claim concerning the excessiveness of his sentence.

[7] Practice Book § 43-22 provides: "The judicial authority may at any time correct an illegal sentence or other illegal disposition, or it may correct a sentence imposed in an illegal manner or any other disposition made in an illegal manner."

[8] Unless otherwise noted or apparent from the context, all references hereinafter to the trial court are to Judge Fasano.

[9] Neither the defendant nor the state presented any testimony at the hearing, relying, instead, on the exhibits submitted by the defendant in connection with the motion to correct.

[10] It appears that this earlier PSI was provided to Judge Kulawiz in connection with the offenses referred to in footnote 4 of this opinion.

[11] Contrary to the suggestion of the memorandum of decision, the record reflects that the state already had charged the defendant with kidnapping when Judge Kulawiz tendered her plea offer to the defendant. Indeed, as the state points out, the defendant acknowledged as much during argument on the motion to correct. In any event, "[b]efore the commencement of trial, a prosecutor has broad authority to amend an information under Practice Book § [36-17]"; (internal quotation marks omitted) *State* v. *Ayala*, 324 Conn. 571, 585, 153 A.3d 588 (2017); and the defendant makes no claim on appeal that the filing of the kidnapping charges by the state was vindictive or otherwise improper.

[12] The defendant's claim of a due process violation is limited to the federal constitution; he makes no claim under the due process provisions of the state constitution.

[13] The state also argues in the alternative that the defendant's claim of a vindictive sentence is barred by principles of res judicata because he unsuccessfully raised a substantially similar claim both in the habeas court and before the sentence review division. The record reveals, however, that the state did not make that argument in the trial court and, as a result, the trial court did not address it. Our determination that the defendant cannot prevail on the merits of his claim makes it unnecessary for us to address the state's res judicata defense.

[14] We note that when the presumption does apply, it may be overcome by "objective information in the record justifying the increased sentence." *United States* v. *Goodwin*, 457 U.S. 368, 374, 102 S. Ct. 2485, 73 L. Ed. 2d 74 (1982).

[15] The defendant does not claim that he is entitled to a presumption of vindictiveness under *Pearce*. His concession in this regard is well-founded in view of the fact that the United States Supreme Court has "limited [the application of the *Pearce* presumption] . . . to circumstances where its objectives are thought most efficaciously served . . . . Such circumstances are those in which there is a reasonable likelihood . . . that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority." (Citations omitted; internal quotation marks omitted.) *Alabama* v. *Smith*, supra, 490 U.S. 799. As the defendant recognizes, this is not such a case.

[16] In Connecticut, "[i]t is a common practice . . . for the presiding criminal judge to conduct plea negotiations with the parties. If plea discussions ultimately do not result in a plea agreement, *the trial of the case is assigned to a second judge who was not involved in the plea discussions and who is unaware of the terms of any plea bargain offered to the defendant.* The judge responsible for trying the case also is responsible for sentencing the defendant in the event the defendant is convicted after trial." (Emphasis added.) *State* v. *Revelo*, supra, 256 Conn. 508 n.25. Our Supreme Court repeatedly has recognized the propriety of this procedure, explaining that, "[a]s long as the defendant is free to reject the plea offer [made after negotiations conducted by one judge] and *go to trial before a [second] judge who was not involved in or aware of those negotiations*, [the defendant] is not subject to any undue pressure to agree to the plea agreement, and the impartiality of the judge who will sentence him in the event of conviction after trial is not compromised." (Emphasis added; internal quotation marks omitted.) Id., 507–508. Thus, the rule prohibiting a sentencing judge from learning about the substance of unsuccessful plea negotiations is designed to protect the accused. In the present case, however, the defendant himself *affirmatively requested* that Judge Murray consider Judge Kulawiz's thirty year offer, albeit in support of his appeal for leniency.

[17] Although the defendant has disavowed any reliance on the presumption of vindictiveness adopted in *North Carolina* v. *Pearce*, supra, 395 U.S. 726; see footnote 15 of this opinion; it is difficult, as a practical matter, to distinguish the inference of vindictiveness on which the defendant *does* rely from the *Pearce* presumption of vindictiveness.

[18] It bears emphasis that, despite the length of the sentence imposed by Judge Murray, the sentence review division determined that that sentence was neither inappropriate nor disproportionate in light of the nature of the defendant's offenses, the defendant's extensive criminal record, and the high likelihood that the defendant would reoffend if given the opportunity.

[19] It is also true, however, that the probable cause hearing was held in September, 1992, and the plea offer was not made until well over two years later, in January, 1995.

[20] We note that in *State* v. *Coleman*, 242 Conn. 523, 700 A.2d 14 (1997), our Supreme Court considered "whether a defendant who has been sentenced under the terms of a plea agreement but who later is permitted to withdraw his guilty plea and allowed to proceed to trial is entitled, following his conviction after trial, to an explanation from the trial court setting forth its reasons for imposing a greater sentence than had been imposed under the plea agreement." Id., 525. Invoking its supervisory authority over the administration of justice, the court concluded that, in those circumstances, a trial court should provide such an explanation following a timely request by the defendant. Id., 539. The defendant makes no claim under *Coleman*, which, unlike the present case, involved a sentence imposed following the withdrawal of a guilty plea. Id., 527. Even if *Coleman* were applicable, however, the defendant would have been entitled to an explanation from Judge Murray setting forth his reasons for imposing a greater sentence than that offered by Judge Kulawiz only if the defendant had made a timely request for such an explanation; see id., 539; which, of course, he did not do.